This is the Director, Mr. Saloon. Is that right? Yes, sir. We're ready. May it please the Court, this is an appeal by Huntington Ingalls Incorporated of a benefits review order of a hearing loss case under the Longshoremen and Harbor Workers' Compensation Act. The facts are very specific. It involves a worker who claimed that he had a hearing loss while employed for Ingalls Shipbuilding in Pasco, Mississippi. He worked for Ingalls for six years. He, in 2009, fell and injured both knees and had a workers' compensation claim against Ingalls for his knee injuries, which led to knee replacements. All of that was resolved between Ingalls and the claimant. Six years after he left Ingalls, he felt like he may have a hearing change. He lived in Pascagoula, but he learned of an audiologist in Hattiesburg, 105 miles away, named Holly McClain. And he drove up there, and he had an audiogram by the audiologist that said he had a 17% hearing loss. This was five years after he left Ingalls. The annual autograms that were performed on him while in Ingalls by a certified audiologist all reflected he had 0% hearing impairment during the time that he was at Ingalls. In 2014, five years later, he had this audiogram by Ms. McClain. Ingalls asked for a second opinion by an audiologist named Dr. Jim McDeal in Mobile. This was within five months of the audiogram by Ms. McClain. Dr. McGill's audiogram reflected that he had a 0% hearing loss. Well, didn't he first do another test that showed he also had a 17%? That was Ms. McClain's. Right, she did a test, but I thought that McClain did the 17.2. Yes, ma'am. Okay, and then so McDeal said 0, but did find a mild high-frequency sensorineural hearing loss. Dr. McDeal, on his audiogram in the fall of 2014, found that, that's correct, found that he had a 0% hearing loss. Impairment, but did have a hearing loss. He had a slight change. Yes, ma'am. A high-frequency hearing loss. Yes, ma'am. Which is fairly common with people in life. That's correct. It was not a rateable, it was a 0% hearing impairment, but there was a slight change in his hearing. What did it mean that there was accepted liability for the medical benefits related to this hearing loss? What happened after Dr. McClain, Holly McClain's audiogram that showed 17%, and then after Dr. McDeal's audiogram that showed a 0 impairment but a slight change in the high frequency, but not a rateable impairment, the adjuster for Engels in December of 2014 advised the claimant that if he'd like to have hearing aids, Engels would pay for it if he would go to Gulf Coast Audiology 10 minutes from his home. And the adjuster at that time, before this claim was at the law judge level, offered to purchase hearing aids for him if he wanted. And to this day, he has not gotten the hearing aids. What difference does it make? Explain to me. I know you made a big deal about how the other doctor was 100, and I know it's an issue whether it's a doctor or not, but let's just use the term for now, 105 miles away and that you're supposed to be in your zone, but if they are more comfortable with the other person, how is that harmful? What's it to your client if they get the same hearing aid or is comparable at this other place? Well, this, as we fast forward and go through the discovery, once the case was transferred by the district director to the law judge level, and once the case went to trial and after the discovery was performed, the administrative law judge found that, at first, he did not have a hearing impairment. He further found that the cause of his hearing change was unrelated to his employment with Engels. Right, but then they changed that. They overruled that. I'm sorry, ma'am? They later said they overruled that, didn't they? No, ma'am. They reversed and remanded to the district director regarding the benefits because of the stipulation below, which was that your clients would pay for the hearing aids. Again, I ask, what difference does it make? Is it because you'll have a special deal that's the treater group for your company? That's where everybody goes for their workers' comp and that little hospital unit? What's going on here? This is the difference. The proof showed at trial before Judge Romero. The proof showed at trial that both Dr. McClain and Dr. Medill testified that his hearing loss could be consistent with noise, his hearing loss could be consistent with aging, and his hearing loss could be consistent with ototoxic drugs, that is prescribed medications or excessive use of aspirin that can affect one's ability to hear. I guess I'm not talking about causation, and I guess you just don't want to answer that question that I've asked a couple of times now because I'm not trying to talk about whether or not it was caused by his being at that particular company. My question was about where you offered, when I say you, your client offered to pay for these hearing aids. The adjuster did. That was a stipulation in the record. The Department of Labor's Benefit Review Board is holding you to it. What's wrong with that? Well, as Chief Judge Boggs said in her dissent of the Benefits Review Board, not every change in hearing justifies a hearing aid, and it's up to a qualified physician, a trained physician or audiologist that's trained, not audiologist, I'm sorry, audiolingologist, a trained physician in the diseases of the ear, to understand what's causing the hearing change. Just because there's a hearing change does not mean that one needs a hearing aid. It could be underlying medical causes. That's exactly right. You may not need a hearing aid, but your client stipulated to give the hearing aid, didn't they? So at that point you can't litigate about whether they need the hearing aid anymore, can you? I guess I'm a little bit confused. Hearing aids are analogous to crutches or wheelchairs or artificial limbs. What is causing the hearing change is what has to be determined by a qualified physician. Then maybe your client shouldn't have made a stipulation that it took responsibility and would buy the hearing aids then. I just don't understand what we could talk about causation and all of that, but that's not what this case is about, I don't think, is it? Yes, ma'am, it is. It is about the narrow issue of this case is whether an audiologist is qualified to treat and diagnose the underlying cause of the hearing change. Just because my client agreed to buy the claimant hearing aids, Section 7B of the Longshore Act allows a worker to choose a physician to treat him for the cause. And so the case is about whether or not an audiologist is categorically a physician under the statute and the regulations. Isn't that it? That's exactly right, Judge Grace. The case boils down to, the core issue this case boils down to, is whether an audiologist can be considered as a physician under Section 7B of the Longshore Act to be the lifetime treater. But that's without regard for whether or not he's qualified to make some determination about causation. Isn't it? We look at the statute, we see what it says. It says physicians, and then it has other people who, for the life of me, I would never call a physician, but they're listed. And all we're doing is reading that and then trying to make a determination whether or not it's ambiguous. If so, what kind of deference we give to the agency's determination about whether or not an audiologist qualifies as a physician. And that's it. That's correct. If he has an employment-related injury or disease, he has a right to choose a physician under Section 7B to treat him for his lifetime for that problem at the expense of the employer. And it boils down to whether my client agreed to buy him hearing aids. It boils down to whether an audiologist of his choosing is empowered under Section 7B of the statute to treat this claimant for his lifetime cause of his underlying hearing change. So our answer to the question drives everything else, right? Our answer to the question about audiologists informs all these other subsidiary questions, right? I apologize. I mean, in terms of who's paying. Well, let me ask the question more. Neither side, as I understand it, contend that there is any ambiguity. Is that right? That's correct, Your Honor. So neither side says ambiguity is present. Both sides just say our reading of it is the correct and only reading. Is that fair? That's exactly right, Judge. All right. So although a determination was made at least that there is ambiguity, and if there is ambiguity, you know, what kind of deference, whether it's our deference, Skidmore deference, et cetera. So I know you've talked a lot about the causation issue, but just iterate for me why there is not ambiguity. I mean, I know that just because there was a two-to-one split doesn't mean ambiguity. I mean, we do that all the time. It's not, you know, two-to-one. We disagree on an outcome, but it doesn't mean the case was ambiguous. It just means we have different points of view. You know, Your Honor, you're correct that no side takes the position that the implementing regulation of Section 7B, which is 20 CFR 702.404, that's the regulation implemented by the Secretary of Labor with respect to how the Secretary of Labor defines physician in the statute. And what that regulation says, that the term physician includes doctors of medicine, surgeons, podiatrists, dentists, clinical psychologists, optometrists, and osteopathic practitioners within the scope of their practice as defined by state law. Other practitioners of the healing arts, which are not listed herein, are not included within the term physician, which includes audiologists. They are not specifically named within this regulation to come within the definition of the Secretary of Labor's term physician. And all sides have said this regulation is unambiguous. So to your point, Your Honor, the statutory or the regulatory interpretation of this regulation should be given its plain and simple meaning, and that is audiologists are not considered physicians for the lifetime treatment of an injured worker under the Longshore Act. But it doesn't have to just be physician. It can include certain professions under NOSINTA or Associus Canon. Well, I guess really the regulation talks about the practitioners that are specifically identified as physicians. They're allowed to treat the worker within the scope of state law. And there's nothing within the scope of Mississippi law that allows an audiologist to treat the underlying cause of the hearing change. All that audiologists are essentially limited to do in the state of Mississippi is to evaluate and test for hearing loss and to fit and dispense hearing aids. Okay. Well, the definition from physician, the categories that are excluded are like faith healers and things. You're not saying an audiologist is a faith healer or that it's similar to that, are you? We're trying to decide what it's more similar to. Is it more similar to physician or is it more similar to faith healer? That's what the Board on Reconsideration, that's what the majority, that was the spin they took on it. That's the majority opinion that we have right now. So you need to address that. Yes, ma'am, that's correct. But at the same time, the Benefits Review Board is not a policymaking agency. And if the Secretary of Labor wanted to include audiologists within the definition of physician under 70244, then the Administrative Procedures Act requires the Secretary of Labor to publish the notice of the amendment in the Federal Register and to give all interested parties a chance to be heard, which would include the American Medical Association, the American Academy of Otolaryngologists, the State Boards of Health, and maritime employers who have to pay for the treatment of the underlying cause of the hearing change, to give them an opportunity to be heard. If the Secretary wants to amend the regulation, they have the right to do that, but they have to follow the Administrative Procedures Act. Is optometrists included? I'm sorry? Is optometrists included? They are, Your Honor. They are. They were added to the definition of physician. They were added. And then we have to look at what's similar, and what's similar is optometrists to audiologists. That's the Board's analogy. But, Your Honor, the trigger to this regulation is that these defined physicians are limited within the scope of state law for providing treatment. And optometrists in the state of Mississippi are given much, much more responsibility in the scope of their treatment than audiologists are. But an optometrist, much like an audiologist, an optometrist can do an eye test or an eye exam, and an optometrist can then make a determination based on that exam about what prescription, I mean, what kind of glasses you need. That's true, Your Honor. But if I've got a real medical problem with my eyes, I want to see an ophthalmologist. I would like to do that too, Your Honor. And so an audiologist can do testing to make a determination about hearing loss, much like an optometrist does with the eye. And then the audiologist can make a determination about what kind of aid is needed based on the amount of loss, you need this hearing aid or that hearing aid. Isn't that comparable to what an optometrist does? No, sir, not in the state of Mississippi, Your Honor. It's governed by statute. In the state of Mississippi, an audiologist cannot treat the underlying cause of the hearing loss. An audiologist can't say you need this kind of hearing aid? Well, an audiologist, based on the extent of the hearing loss, can recommend a hearing aid. Much like an optometrist with glasses. But the difference is, Your Honor, an audiologist cannot treat the underlying cause of what the hearing loss is. And an optometrist can't treat my diabetic retinopathy. I'm going to need an ophthalmologist for that, right? But they say an optometrist is considered a physician under this regulation. This is what an optometrist is allowed to do in the state of Mississippi. Once licensed, he may diagnose and treat disease of the eye, prescribe therapeutic medication, administer anesthesia for the treatment of eyelid lesions, abscesses, or hematomas, remove foreign bodies from the eye, and if he's certified by the Board of Optometry, he can even perform laser eye procedures. So what an optometrist is allowed to do within the scope of state law in Mississippi is far greater than what an audiologist is allowed to do. All right, you have a red light, but part of your being here is to answer our questions, for sure. Thank you. But let me just ask, as you go to your seat, so as part of the last statement you made in answer to Judge Graves and Judge Elrod, are you saying as part of the calculus of the direct and the board, they should have looked to Mississippi law as a defining determination in this calculus? Because I didn't read that. Your Honor, that's what the Secretary of Labor's regulation says, 702.404. These specifically identified medical practitioners that are considered physicians, they are physicians within the scope of their practice as defined by state law. But Mississippi law would not give an audiologist the parameters that it does an optometrist. What a licensed optometrist is allowed to do in Mississippi is far greater than what a licensed optometrist is allowed to do. I got that part. I'm trying to say you're saying that Mississippi law should have been the ultimate determiner of the correctness of your position or the other side's as opposed to whether the term is ambiguous or not. Is that your bottom line? You said your view of this is the one view. It's not ambiguous. And you say your view is amplified by the fact that Mississippi law would not treat an audiologist like it does an optometrist. Is that what you're saying? I'm not trying to ask you a trick question. I'm just trying to get to the bottom of what you're saying, right? That's correct, Your Honor. All right. Okay. We're good. You've got a red light, but you've reserved your rebuttal time. Let's hear from Mr. Jones's counsel, Mr. Jerkovich. May it please the Court. Ryan Jerkovich on behalf of Respondent Clarence Jones. So we would like to clarify the issue. We don't think that the issue is the causation of the hearing loss. We thought that issue was had to be dealt with. I didn't get your voice up. Oh, I apologize. We think that the issue is, in fact, whether the Department of Labor's interpretation is a permissible one, and I think that's all there is to the issue. I don't think the causation question comes into it at all. If we're looking at permissible interpretations, then why can they say that everybody says it's not ambiguous? It would seem like ambiguity would be a good thing for you to argue, and are you not arguing that? You're correct. I've gone back and forth in this case where the ambiguity is in the statute, and I understand the petitioner's position is that, well, there's no ambiguity. The dictionary says the position means this. I think the ambiguity for us comes in when you compare Section 908, the disability statute, which requires an audiologist or otolaryngologist to handle the audiogram. Audiologists can issue all kinds of tests, but the audiogram is what the statute has decided, is the touchstone to determine the level of disability. But on the other side of that, it goes into Section 907 because the audiogram is what you use to calibrate the hearing aids, and so that's really the main treatment that can be offered if you have occupational noise-induced sensorineural hearing loss. It's not like we're going to have a surgery on you and give you an ear replacement or something. That's just not what's going to happen. They just fit them with hearing aids. And so in that case, since the audiologist or otolaryngologist is required in Section 8 and by implication Section 7, that generates an ambiguity then because the audiologist is the one who's qualified to administer the audiogram. You can imagine a situation where the otolaryngologist, the ENT, is not going to administer the audiogram. They're going to retain their own audiologist to do it. So I think that we've tried to emphasize that our interpretation is the best one, but I think that the statute in its structure has a variation of meanings that are permissible or conjurable at least, and some are better than others. And so I think our position is that the resolution of any ambiguity in the statute that the Department of Labor has come up with is permissible and that I don't think our position is that the petitioner cannot demonstrate that it's impermissible. If it's an ambiguity in 20 CFR 702.404, is the issue Skidmore, Auer, or Chevron? Oh, I apologize. My administrative law course is many years behind me. We argued, I think, Chevron deference in our briefing, and I can't recall the final statement. But you think it doesn't matter? Well, I can't say that, but I do think that the deference to the ‑‑ it's complicated because we argued it one way in our motion for reconsideration, and then we changed gears at the BRB when I think we understood how the director was presenting the position. And so, yes, I understand the question. So it's at this point in the proceedings, we would say that the agency's way of handling the issue deserves deference, and that's that the agency has essentially treated the audiology situation as though it's any other medical problem, that the claimant has their attending professional and then the employer has their attending professional, and if those two create an issue on causation or recommended treatment or whatever, then the director can appoint a section 907E professional to handle it, whether it's an actual MD or, in this case, the doctor of audiology. And so that, we think, deserves deference because it just kind of fits in with the statutory scheme. Hearing loss is sui generis in the act. I think it's the only one, in my review at least, in the act where a specific professional is named, you know, audiologist or otolaryngologist. It's also the only one, I think, where a specific test is prescribed, the audiogram. And that's something that the audiologist is uniquely suited to administer as a professional of, I guess, first impression because, you know, you don't need a referral to go to the audiologist. You, as a claimant, can note your hearing loss problem and go to the audiologist, be examined, report your history, have the test. The test can be interpreted by that audiologist, and then that audiologist can calibrate the treatment. So we think that that process makes sense and deserves deference. So the audiologist can, did you say calibrate treatment? Calibrate the aids because, you know, there's no one-size-fits-all on hearing aids. The hearing aids have to be selected, and then you calibrate the aids, is my understanding, to the actual audiograms. I assume that might be kind of the urgency in this particular case, in Mr. Jones' claim, where he had his attending audiologist and the employer sent him to Dr. McGill or McDill, rather. And then at the point of going to the ALJ for a formal hearing, we then had a third audiologist, I think it's Coastal Audiology maybe, Gulf Coast Audiology, that they had selected for him to go to, even though they had already selected one to administer tests. And so we suspected that part of the issue was we have another audiologist who can try to render an alternative causation finding, as was discussed on the petitioner's oral argument. We don't know that, but that's, I assume, why the Act limits everybody to their own choice of physician, so that they can't continually go to a different professional to obtain variable opinions. But I apologize if I digress from your question, Your Honor. You're all good. So the petitioner placed a lot of reliance on the Potter case regarding pharmacists. We think that that's a distinguishable situation. The pharmacists will dispense prescription medications, just, I guess, like the audiologist will dispense the prescribed hearing aids. The difference is the pharmacist doesn't write their own orders. The audiologist will write their own orders. They will prescribe the hearing aids and dispense them. But a pharmacist usually doesn't offer tests, doesn't usually take a history, usually just accepts the order and then dispenses on, pursuant to the order. I think these are very different situations. And so I think the audiologist is not like a pharmacist. It's just like it's not like a faith healer. That argument was pushed in brief. And the audiologist has a Ph.D., has state licensure, goes through quite a bit of training. It's very quantitative. I think a faith healer is probably something very different, although I'm not quite certain what the content of that would be. As far as the regulation being ambiguous, I think the 70244, there may or may not be an ambiguity there. Our point, Mr. Jones' argument, was less that it was an ambiguous regulation, more that it vitiated because of the amendments to the Act over the years. The petitioner's reply brief suggests that if Congress had wanted or the agency had wanted to make it clearer, they could have. I think Mr. Jones' point, going the other direction, is that the agency or Congress didn't amend going in a direction to exclude audiologists from the choice of physician rules. It would have been very easy to include the audiologists in the list of faith healer, naturopath, and other practitioners of the healing arts if they were to not be considered an attending physician, as suggested by Section 8 of the Act. Mr. Jones would also point out, I guess, the practical effects of the petitioner's position, which is that if audiologists aren't physicians for the Act and there's no choice in an audiologist, that means that, I suppose, claimants will then start just going to their primary care doctor and get a referral to an otolaryngologist or get a referral to an audiologist. It essentially interposes an additional step in the process if the claimant wants to preserve their rights under the Act. It adds expense, adds delay, frustrates the humanitarian purpose of the Act to a certain extent, whereas the system that we have in place, the claimant can usually, their household will complain to them that they don't hear anything anymore, and so they'll go to the audiologist and get a hearing test. That's kind of the way the process has worked out in practice, and Mr. Jones' position is that this isn't impermissible under the Act. If there are no questions, I would let the United States have the balance of my time. All right. Thank you, sir. Thank you, and good morning, Your Honors. May it please the Court. My name is Sean Bukowski, and I represent the Director of the Office of Workers' Compensation Programs. Before I jump into the sort of technical details of regulatory construction that I think this case ultimately turns on, I just wanted to take just a minute of my time here to step back and put the situation in a little bit of a broader context, what the practical outcome, what the real-world effects of this are. Occupational hearing loss is all too common in longshore cases, especially for shipyard workers, and the basic question here is whether a worker that has hearing loss, and there's no dispute that Mr. Jones has occupational hearing loss and the employer has conceded that it's liable for medical care, including hearing aids, the question is whether they have a right to pick an audiologist to provide the care needed to treat that injury, in particular the fitting and adjusting of hearing aids. The board held that they did. Now, this does not mean, though, that the audiologist that an injured worker picks gets to determine, finally, if the worker has hearing loss in the first place or what the cause was. That is something for an AOJ to decide after both parties put in all their evidence. It also doesn't mean that the employer is locked in to paying whatever that audiologist charges. If the audiologist's treatment rates are unreasonable, they can ask the district director to order a different change or to change the rate, and the same goes for any hearing aids that the audiologist prescribes. If the employer can provide the exact same hearing aid at a different cost, they can ask the district director to allow them to get it from another source, and that will likely be approved. And it also doesn't mean that the audiologist is the permanent or sole source of care. If the district director at any time has a reason to believe that the audiologist isn't adequate to give the claimant the care they need, they're authorized under the statute and the regulations to order a change. That would be, for example, if there was a more serious problem that couldn't be solved just by hearing aids, then the district director might say, well, look, no, this audiologist is just not enough for this. This needs to go to a specialist, an otolaryngologist, for example. All it means is that the worker gets to pick, in the first instance, the audiologist to supervise their treatment. And as my colleague just pointed out, the real-world practical implication of all this is that if the word is wrong, if claimants can't pick audiologists, all that's going to happen is claimants are going to pick otolaryngologists instead. Otolaryngologists have medical degrees. They are unquestionably physicians under any definition of that term. And the claimant could, in fact, pick their otolaryngologist based on what audiologist they're affiliated with. So if a claimant wants a particular audiologist, they can generally achieve the same result by picking an otolaryngologist who is going to then immediately refer them to an audiologist. So the bottom line is that all that changes is it adds this additional layer of time and expense to the process. It would also affect some of the employer's rights, too. The same Section 7, a different subsection D4, pardon me, gives employers the right to have a physician, and again it uses that word physician, to evaluate a claimant for purposes of the employer evaluating and defending its claim. And the employer here did do that. And notably, when they did it, they did not ask for a second examination by an otolaryngologist or by any of the categories of professions listed specifically in the reg. They asked for an audiologist. They had him tested by another audiologist. If the board is wrong here, then it seems to me that it's also necessarily wrong that employers would be no longer able to use audiologists as part of their process of defending a claim. They briefly point out in their reply brief that sometimes statutes use the same word to mean different things, but it would be very unusual in not just the same statute but the same section of the same statute. The definition of physician we're talking about here isn't just limited to the employee choice provisions. I wanted to talk for a second about deference and ambiguity. I apologize if I was part of this confusion in our brief. I think particularly after Kaiser v. Wilkie, the word ambiguity is a little bit ambiguous. That was terrible. Anyway, it can be used here in two senses. There's facial ambiguity, and I think there's no doubt that the regulation we're looking at here, 702.404, is facially ambiguous about whether audiologists are covered. The regulation says, here's a group of people that are in, here's a group of people that are out. The audiologist is not on either one of those lists. So it's ambiguous facially. But we think that if you do, as the Supreme Court instructed in Kaiser, and really look carefully at this, bear down on it, as if there is no agency giving an opinion, we think that there are basic tools of statutory construction applied to the facts, does lead to the conclusion that audiologists are covered because they are very similar to the people that are included, especially to optometrists. Do you have a comment on the argument that Mississippi law is what provides the guidance and that under Mississippi law it's really clear that audiologists would not be included? I don't have a thorough answer to that because I don't think it was briefed by the parties, so I haven't looked into it. But my understanding from what my counterpart argued is that in Mississippi, audiologists are authorized to fit hearing aids, evaluate hearing loss, and fit hearing aids to correct that loss. And that is the medical treatment that we're talking about here. I think that is acting within the scope. There's been no allegation, as far as I can tell, that claimant's audiologist was violating state law at any point in her treatment or would be violating state law if she did go ahead and fit and adjust these hearing aids. Would Skidmore deference be the correct deference because the CFR defines the term physician in a genuinely ambiguous way, and the directors interpreted it, so therefore Skidmore deference would be the right? Or do you not agree with that? I think it's a little bit tricky, I think, in the post-Kaiser world. I would have said no before. I think that our deference, the agency is only entitled to our deference if you take a look at the reg, apply all the legal reasoning you can, look at everything else that's related to it, and decide at the end of the day, you know what, this is a tie. I can't tell whether audiologists are correct. In that case, I think our deference. Yes. Arguably doesn't implicate the substantive expertise. Anyway, whether our deference would apply. I think we are, yeah. Also, I mean, sorry, I'm thinking a little bit off the top of my head here, which is always dangerous. If you come to the conclusion that the regulation is exactly tied, after looking at everything, it kind of doesn't matter if we get Skidmore or our, it should be enough to push it over the line. But, again, we don't think that we're in that situation here where it is exactly tied. Now, our interpretation of the statute in the regulation itself is entitled to Chevron deference, but the employer here is not challenging the regulation facially, so I don't think you have to worry about that. So at least there's one kind of deference we don't have to worry about here. You just say the director's position is correct, not necessarily because deference should be given to it, but it's the fair and correct reading. Yes. You're going in. We are authorized to not just regulate, but to administer the statute, and I think as evidenced by the fact that the employer went to audiologists this year, this is not the first time that a case has come up where a claimant went to an audiologist in a hearing loss case. It's just the first time that anyone ever challenged it. People were a little bit surprised when this came up. Judge Boggs, she's a very experienced judge, and she believed to the contrary enough to write extensively on it. Pardon me? She believed to the contrary enough to write extensively on it. Do you have any comments on the dissent? I think that the dissent does not adequately account for the fact that the first sentence of the regulation uses the term includes rather than something like means or is, and that the last sentence of it doesn't just say everyone else is out. It says naturopaths, faith healers, and other practitioners of the healing arts are out. I think that the better reading of those two, of the first and last sentences, which are really the key to the reg, is more in tune with the board's majority where you look at a medical profession, and if it's sufficiently similar to one of the things that's listed in the first sentence, then that can be a physician. If there are no further questions, I'd like to end by asking you to affirm the benefits of the board's decision. Thank you, sir. All right. Back to you, Mr. Sewell. Both sides, really all sides agree that the regulation that we're talking about here today is unambiguous, and the law seems to be in agreement that when a regulation is unambiguous, it's entitled to its plain and ordinary meaning. The statement that, by the director in his brief and our argument today, that in many cases workers with hearing loss always pick their own audiologist, as Chief Judge Box said in her dissent, there's no evidence of that in this record. It's an unsupported statement, and she also referred to it as a bald assertion. There's no proof of that in the record in this case. When the regulation defines that the medical practitioners are considered physicians and goes on to say that other practitioners of the healing art, which are not included in the list above, are not physicians within the meaning of this regulation, and neither the Secretary of Labor or the Benefits Review Board, by judicial fire, can change that regulation to include an audiologist within the definition of physician without complying with the Administrative Procedure Act to amend that regulation to include an audiologist as a physician. And that requires public notice, public comment, and the right for all administrative parties to be heard on the attempt by the Secretary to include an audiologist as a physician. Thank you. All right. Thank you to all counsel for your briefing and the argument presented.